IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**RONALD JAMES STOKES,**      Case No. 1:17 CV 2139

    Plaintiff,

    v.      Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.      MEMORANDUM OPINION AND ORDER

### INTRODUCTION

Plaintiff Ronald James Stokes ("Plaintiff") filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). The parties consented to the undersigned's exercise of jurisdiction in accordance with 28 U.S.C. § 636(c) and Civil Rule 73. (Doc. 12). For the reasons stated below, the undersigned affirms the decision of the Commissioner.

### PROCEDURAL BACKGROUND

Plaintiff protectively filed for DIB in April 2014, alleging a disability onset date of January 11, 2009. (Tr. 13, 160, 188). His claims were denied initially and upon reconsideration. (Tr. 106, 112). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (Tr. 117). Plaintiff (represented by counsel), and a vocational expert ("VE") testified at a hearing before the ALJ on March 18, 2016. (Tr. 30-76). On July 2, 2016, the ALJ found Plaintiff not disabled in a written decision. (Tr. 13-25). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 1-6); *see* 20 C.F.R. §§ 404.955, 404.981. Plaintiff timely filed the instant action on October 10, 2017. (Doc. 1).

**FACTUAL BACKGROUND**

Personal Background and Testimony

Plaintiff was born in April 1971, making him 43 years old on his date last insured, and 44 at the time of the ALJ hearing. *See* Tr. 23, 38. Plaintiff lived in a mobile home with his wife and three dogs. (Tr. 37-38). Plaintiff had a driver's license and drove to the hearing. (Tr. 40).

Plaintiff graduated from high school in 1991, but was in special education classes from first grade onward (Tr. 38-39), and repeated eleventh grade (Tr. 327). He testified to difficulties with reading and simple math. *Id.* After high school, Plaintiff did "factory work" because that was "all [he] knew how to do" and because there was no reading or spelling involved. (Tr. 40); *see also* Tr. 47-52 (summarizing past work). At the time of the hearing, Plaintiff was working through a temp agency but had trouble with required paperwork. (Tr. 41). He worked part-time with the temp agency on and off since 2014 (Tr. 42-43), and just started back one month prior (Tr. 65). When he worked, he did eight hours per day in a factory, though he never worked a 40-hour week. (Tr. 43-44). The week prior to the hearing, Plaintiff worked 30 hours. (Tr. 44). Plaintiff was trying to obtain full-time employment through the temp agency, but often had to leave early for medical appointments, or because he was in pain. (Tr. 42). He stated his ability to obtain full-time employment depended on "how much pain I'm in or how much bending" (Tr. 44); he attributed his inability to work to his physical problems (Tr. 52-55). Plaintiff also noted losing previous work due to failure to pass a written test. (Tr. 64).

Plaintiff testified he "love[d]" to cook, and sometimes shopped for groceries or went to the laundromat with his wife. (Tr. 58). He vacuumed, swept, and mowed the lawn. (Tr. 58-59).

Plaintiff estimated it would take him twenty minutes to read a ten word sentence. (Tr. 62). He was not able to read, remember, and understand something. *Id.* Plaintiff testified he was at a

job for a "couple weeks" and still did not understand the paperwork, which involved "a little bit of math". *Id.* He did not know how to write a check and had difficulty with spelling. (Tr. 63). By way of example, he explained it took him six months to learn to spell his daughter's name. *Id.*

Relevant Medical Evidence[1]

In June 2014, Plaintiff underwent a psychological evaluation with J. Joseph Konieczney, Ph.D. (Tr. 326-30). Plaintiff drove himself to the evaluation and arrived on time. (Tr. 326). Plaintiff "reported a lengthy and consistent formal work history until 2008" with his longest period of employment being as a machine operator for eight years. *Id.* He most recently worked as a laborer in 2008. (Tr. 326-27). Plaintiff had no past psychiatric or psychological treatment. (Tr. 327). He had no psychiatric symptoms, and "[h]is general thought content, although reflective of his intellectual limitations, did not otherwise appear to be unusual." *Id.* Plaintiff graduated from high school in 1991, having repeated his eleventh grade year. *Id.* He reported a history of back and knee problems with nerve damage in his back. *Id.*

On mental status examination, Dr. Konieczney noted Plaintiff was "pleasant and cooperative" but "occasionally vague in his presentation"; his "level of motivation and participation throughout the evaluation seemed adequate." *Id.* He spoke "reasonably well" and "showed no poverty of speech in his conversation." *Id.* Specifically, Dr. Konieczney noted Plaintiff's "level of speech appeared to be greater than would be anticipated given the results of intellectual testing." *Id.* Plaintiff was oriented and his "ability to concentrate and attend to tasks showed no indications of impairment." (Tr. 328). He made an error performing a serial three subtraction task, "[h]is responses were quite slow, and he used his fingers to assist with his

---

1. The undersigned summarizes only the evidence relevant to the ALJ's consideration of Listing 12.05C because that is the only challenge raised by Plaintiff. *See Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (arguments not raised in opening brief deemed waived).

calculations." *Id.* His number recall "was in the borderline to extremely low range, encompassing four digits forward and three digits backwards." *Id.* His insight was fair and he had "mild deficits in his overall level of judgment." *Id.* Dr. Konieczney therefore noted Plaintiff's "overall level of functioning is at a slightly reduced level of efficiency due to the impact of his intellectual limitations." *Id.* Plaintiff reported daily activities of morning hygiene, household chores (including cooking, cleaning, laundry and shopping), watching television, and social activities with friends. *Id.* However, his wife managed the finances. *Id.*

Dr. Konieczney administered the Wechsler Adult Intelligence Scale-IV and found Plaintiff had a full-scale IQ of 60, with other sub-scores ranging from 62-69. *Id.* He explained:

> Ronald's full scale IQ places him in the extremely low range of adult intellectual functioning. There is essentially no scatter among the various index areas. All lie in the extremely low range. Subtest scores show a moderate degree of scatter, ranging from 2 to 6. Ronald shows relative deficits in the area of analysis of relationships. He shows relative strengths in the area of form perception. Overall, it would appear that Ronald's intellectual capabilities lie in the extremely low range.
>
> Based upon the information gathered during the testing and interview session, it is my opinion, with reasonable scientific certainty, that Ronald Stokes suffers from a diagnosis of Borderline Intellectual Functioning. Although results of the intellectual testing place his capabilities in a range that could suggest [] Mild Intellectual Disability, Ronald's presentation and apparent level of adaptive functioning would appear to extend beyond that which would be considered typical for an individual suffering from a diagnosis of Mild Intellectual Disability. As such, a diagnosis of Borderline Intellectual Functioning would seem more appropriate.

(Tr. 328-29). Dr. Konieczney opined Plaintiff would show "some mild to moderate" limitation in the ability to understand, remember, and carry out instructions. (Tr. 329). He had "no significant limitations" in the area of attention and concentration and persistence in single and multi-step tasks. *Id.* "As a result of his intellectual limitations", Plaintiff would have "some diminished tolerance for frustration and diminished coping skills" to respond to "severe supervision and interpersonal situations in the work setting"; however, he could respond appropriately to normal

4

such situations. *Id.* Finally, Plaintiff would have similar limitations impacting his ability to respond to "severe pressure situations" in a work setting, but could respond appropriately to normal situations. *Id.*

In June 2014, state agency physician Aracelis Rivera, Psy.D., reviewed Plaintiff's mental health medical records. (Tr. 85-87). She opined Plaintiff was moderately limited in understanding and memory, explaining that he "would have no difficulty recalling short and simple instructions, but may have some difficulty recalling complex or very detailed instructions due to his learning trouble." (Tr. 85-86). He was also moderately limited in his ability to carry out short and simple instructions, to maintain attention and concentration for extended periods, and to complete a normal workday and workweek; he was markedly limited in his ability to carry out detailed instructions. (Tr. 86). Dr. Rivera opined Plaintiff was not significantly limited in his ability to sustain a routine, work in coordination or proximity to others, or make simple work-related decisions. *Id.* Plaintiff had no social interaction limitations, but moderate limitation in the ability to respond appropriately to changes in the work setting. (Tr. 86-86). Specifically, Dr. Rivera opined Plaintiff could "adapt to a static [work] setting". (Tr. 87).

In December 2014, state agency physician Paul Tangeman, Ph.D., reviewed Plaintiff's mental health medical records. (Tr. 101-03). He offered slightly fewer restrictions, opining that Plaintiff was not significantly limited in his ability to carry out short and simple instructions, and could "carry out 1-3 step tasks that do not require sustained fast pace or strict production quotas." (Tr. 102).

Earnings History

The record contains Plaintiff's certified earnings record from the Social Security Administration. (Tr. 169-70). (Tr. 169-70). It shows earnings from 1987 to 2009, and again in

2014. *Id.* Between 1993 and 2008, Plaintiff had yearly earnings ranging from approximately $8,000 (1993) to approximately $27,000 (1999). *Id.* He earned over $16,000 each year from 1995 through 2008, including over $20,000 in the years 1997-99, 2001-05, and 2008. *Id.*

ALJ Decision

In her written decision dated July 12, 2016, the ALJ found Plaintiff met the insured status requirements of the Social Security Act through December 31, 2014, and had not engaged in substantial gainful activity from his alleged onset date (January 11, 2009) through his date last insured. (Tr. 15). Plaintiff had severe impairments of osteoarthritis of the bilateral knees status-post arthroscopies for a recurrent torn meniscus of the left knee, lumbar radiculopathy with disc herniation at L4-L5 and L5-S1, and borderline intellectual functioning. *Id.* The ALJ found, however, that none of these impairments, individually, or in combination, met or medically equaled the severity of one of the listed impairments. (Tr. 16). The ALJ explicitly considered Listing 12.05 regarding intellectual disability. (Tr. 16-17). The ALJ then concluded that through the date last insured, Plaintiff had the residual functional capacity:

> to perform light work as defined in 20 CFR 404.1567(b). [He] can frequently lift/carry/push/pull 10 pounds and occasionally lift/carry/push/pull 20 pounds. [He] can sit for 6 hours in an 8-hour workday and stand and/or walk for 4 hours in an 8-hour workday. [He] can occasionally climb ramps and stairs, but never climb ladders, ropes and scaffolds. [He] can frequently balance, and occasionally stoop, kneel, crouch and crawl. [He] can have occasional[] exposure to hazards. [He] is limited to performing simple, routine tasks, but not at a production rate pace. The claimant is limited to occasional workplace changes that can be explained to him.

(Tr. 18). The ALJ found Plaintiff could not perform any past relevant work, but through the date last insured, could perform other work. (Tr. 23). Therefore, the ALJ found Plaintiff not disabled from January 11, 2009 through December 31, 2014. (Tr. 24).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

## STANDARD FOR DISABILITY

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. § 404.1520—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering his residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is he determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f); *see also Walters*, 127 F.3d at 529.

## DISCUSSION

Plaintiff presents a single argument for review: that the ALJ improperly found he did not meet Listing 12.05C. Specifically, Plaintiff argues the record indicates he had deficits prior to age 22, and that (as required by subsection C), he had another impairment imposing an additional and significant work-related limitation or function. The Commissioner contends the ALJ's determination that Plaintiff lacked the required deficits prior to age 22 is supported by substantial evidence, and as such, the Commissioner's determination should be affirmed regardless of any error in applying the additional requirements in subsection C. For the reasons discussed below, the undersigned affirms the decision of the Commissioner.

Listings Generally

The listings streamline the disability decision-making process by identifying people whose impairments are more severe than the statutory disability standard, preventing them from performing *any* gainful activity—not just substantial gainful activity—regardless of age, education, or work experience. *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (citing 20 C.F.R. § 416.925(a); SSR 83–19, at 90). The listings create a presumption of disability making further inquiry unnecessary. *Id.* Each listing establishes specific medical criteria, which a claimant must prove her impairment satisfies to qualify for benefits under a listing. 20 C.F.R. § 404.1525(d); *see also Zebley*, 493 U.S. at 530. It is Plaintiff's burden to establish he meets or equals a listing. *See Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

Listing 12.05

Listing 12.05, which defines intellectual disability, provided at the time of the ALJ's decision:

> Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.05.[2] Plaintiff's argument involves the requirements in Paragraph C:

> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

---

2. The Social Security Administration issued new regulations in September 2016, which took effect in January 2017, for the mental listings. *See* Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138-01 (Sept. 26, 2016). The ALJ issued her decision in July 2016, and thus properly based her findings on the prior version of Listing 12.05.

9

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.05C.

In other words, a claimant must make three showings to satisfy Listing 12.05C: "(1) [he] experiences 'significantly subaverage general intellectual functioning with deficits in adaptive functioning [that] initially manifested during the developmental period' (i.e., the diagnostic description); (2) [he] has a 'valid verbal, performance, or full scale IQ of 60 through 70'; and (3) [he] suffers from 'a physical or other mental impairment imposing an additional and significant work-related limitation of function.'" *West v. Comm'r Soc. Sec. Admin.*, 240 F. App'x 692, 697 (6th Cir. 2007) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.05C; citing *Foster v. Halter*, 279 F.3d 348, 354–55 (6th Cir. 2001)); *see also Joyce v. Comm'r of Soc. Sec.,* 662 F. App'x 430, 433 (6th Cir. 2016) (describing requirements to meet Listing 12.05C).

In her decision, the ALJ concluded Plaintiff did not meet Listing 12.05, explaining:

> The claimant's mental impairment has been considered under the requirements of Listing 12.05 (Intellectual disability). Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports the onset of the impairment before age 22.
>
> In the instant case, I find that there is insufficient evidence to demonstrate or support the onset of the claimant's borderline intellectual functioning before age 22. While the claimant reported that he was in "slow learning" classes in school and repeated the eleventh grade, the claimant also reported that he graduated from high school (Ex. 4F/3). After that, the claimant reported a lengthy and consistent formal work history until 2008 without any mental difficulty. Accordingly, the claimant does not meet or medically equal Listing 12.05.

(Tr. 16-17).

The ALJ thus concluded Plaintiff had failed to show he met the Listing's requirement of "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period". 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.05C. (Tr. 16-17).

*Deficits Prior to Age 22*

Plaintiff first argues it was error to find he failed to show the onset of his borderline intellectual functioning pre-dated age 22. He cites numerous cases from outside the Sixth Circuit to argue that an adult IQ score, combined with a history of special education, creates a presumption that his intellectual functioning deficits began prior to page 22. *See* Doc. 13, at 17-18. He contends this is so because IQ scores remain relatively constant over one's life, and thus a later IQ score may provide evidence of functioning from an earlier time. *Id.* However, even with a qualifying IQ score, Plaintiff has not shown he meets the diagnostic description of Listing 12.05. In *Barnett ex rel. D.B. v. Commissioner of Social Security*, the Sixth Circuit cautioned against "collaps[ing] the Listing's first requirement (significantly subaverage general intellectual functioning) into its third (an IQ score between 60 and 70)." 573 F. App'x 461, 463 (6th Cir. 2014). Moreover, the *Barnett* court was also clear that "borderline intellectual functioning" was not equivalent to "significantly subaverage" functioning. *Id.* at 464; *see also Lawson v. Comm'r of Soc. Sec.*, 2016 WL 1259910, at *4 (N.D. Ohio) ("Where, as here, an ALJ finds the presence of borderline intellectual functioning it is proper to conclude that, of itself, "'borderline intellectual functioning' *does not* meet Listing [12.05's] criteria.") (emphasis in original) (quoting *Barnett*, 573 F. App'x at 463); *Cf. Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 553, 539 (6th Cir. 2014) ("Although an [Intellectual Disability][3] diagnosis is not a necessary prerequisite to satisfy Listing 12.05, its absence is probative for a 12.05C determination.") (citing *Cooper v. Comm'r of Soc. Sec.*, 217 F. App'x 450, 452 (6th Cir. 2007)).

---

3. The term "intellectual disability" has replaced "mental retardation". 78 Fed. Reg. 46,499 (August 1, 2013); *Peterson*, 552 F. App'x at 533, n.1.

Additionally, the Listing requires "significantly subaverage general intellectual functioning *with* deficits in adaptive functioning initially manifested during the developmental period." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.05C (emphasis added). "Adaptive functioning" involves an individual's "effectiveness in areas such as social skills, communication, and daily living skills, and how well the person meets the standards of personal independence and social responsibility expected of his or her age by his or her cultural group." *Heller v. Doe by Doe,* 509 U.S. 312, 329 (1993) (citing Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders,* pp. 28–29 (3d ed.1987)). To that extent, adaptive functioning differs from "academic" functioning. *West,* 240 F. App'x at 698 (citing *Heller*, 509 U.S. at 329, and holding that plaintiff who held a long term, full-time job, with many activities of daily living, did not show deficiencies in adaptive functioning). "The American Psychiatric Association defines adaptive-skills limitations as '[c]oncurrent deficits or impairments ... in at least two of the following areas: communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health, and safety.'" *Hayes v. Comm'r of Soc. Sec.,* 357 F. App'x 672, 677 (6th Cir. 2009) (citing Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders*, p. 49 (4th ed. 2000)).

Further, the Sixth Circuit has explained that "adaptive functioning is different from intellectual functioning, and [a claimant] does not need to produce IQ scores from his childhood in order to meet this requirement." *Peterson*, 552 F. App'x at 540. "Moreover, neither circumstantial evidence such as school records nor a history of special education combined with an adult IQ score are necessarily enough to demonstrate that a claimant had adaptive functioning deficits before age twenty-two." *Id.*; *see also, e.g., Eddy v. Comm'r of Soc. Sec.,* 506 F. App'x 508, 510 (6th Cir. 2012) (holding that a claimant's eighth grade education with a history of special

education classes did not establish deficits in adaptive functioning prior to age twenty-two); *Foster,* 279 F.3d at 352–55 (finding that a ninth-grade education completed through special education classes, followed by numerous unsuccessful attempts at a GED, coupled with an adult full scale IQ of 69 did not establish adaptive functioning deficits prior to age twenty-two); *cf. Hayes,* 357 F. App'x at 676–77 ("This Court has never held that poor academic performance, in and of itself, is sufficient to warrant a finding of onset of subaverage intellectual functioning before age twenty-two."). Further, the Sixth Circuit has held "a lengthy work history, including a variety of semiskilled and unskilled positions" in addition to indications that an individual "is able to adequately manage normal activities of daily living" are sufficient to show an individual does not meet the diagnostic description of Listing 12.05C. *Justice v. Comm'r Soc. Sec. Admin.*, 515 F. App'x 583, 587 (6th Cir. 2013).

In her listing determination, the ALJ specifically cited Plaintiff's ability to graduate from high school and "lengthy and consistent formal work history until 2008 without any mental difficulty" as support for her finding that Plaintiff had not demonstrated onset before age 22. (Tr. 16-17). This finding is supported by substantial evidence in the record. *See* Tr. 38 (testimony that Plaintiff graduated from high school); Tr. 326 (report to Dr. Konieczney that Plaintiff graduated from high school); Tr. 326-27 (Dr. Konieczney's note that Plaintiff reported work history until 2008, with his longest period of employment as a machine operator for eight years, and most recent work as a laborer); Tr. 169-70 (certified earnings records showing earnings from 1987 to 2009); *see also* Tr. 68-71 (VE testimony classifying Plaintiff's past work as unskilled and semi-skilled). Plaintiff's ability to sustain work over such a lengthy time period contradicts an allegation that he met Listing 12.05's diagnostic description. *See Justice*, 515 F. App'x at 587.

Furthermore, within her analysis of Listing 12.05D, the ALJ concluded Plaintiff had only "mild restriction" in his activities of daily living, noting:

> [He] takes care of his own personal hygiene holds a valid driver's license and participates in routine driving tasks; participate[s] in the cooking tasks in the home; participates in cleaning, laundry, and household activities to the extent to which he perceives he is physically capable; and he performs his own shopping tasks.

(Tr. 17) (citing Tr. 328) (Dr. Konieczney's consultative examination).

Plaintiff points to nothing other than Dr. Konieczney's adult IQ score and his special education classes to support onset before age 22. The Sixth Circuit has held this to be insufficient. *See Peterson*, 552 F. App'x at 540; *Eddy*, 506 F. App'x at 510; *Foster*, 279 F.3d at 352-55. Moreover, Dr. Konieczney himself, as the ALJ pointed out later in her decision, explained that Plaintiff's "apparent level of adaptive functioning" led the doctor to conclude Plaintiff's capabilities were above what his IQ score suggested. *See* Tr. 21 (citing Tr. 329) (finding that although intelligence testing suggested "mild intellectual disability", Plaintiff's "apparent level of adaptive functioning would appear to extend beyond that" and "[a]s such, a diagnosis of borderline intellectual functioning would seem more appropriate").

Plaintiff objects to the ALJ's failure to make an explicit finding that Plaintiff "does not currently suffer adaptive deficits that satisfy the requirements of the listing." (Doc. 13, at 19). Although the ALJ's wording could have been clearer, "judicial review does not contemplate a quest for administrative perfection". *Hill v. Astrue*, 2013 WL 3293657, at *4 (W.D. Ky.) (citing *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989)). Although the ALJ stated that there was "insufficient evidence to demonstrate or support the onset date of the claimant's borderline intellectual functioning before age 22" without reference to adaptive functioning, in the previous paragraph, she correctly defined the intellectual disability required for Listing 12.05 as "significantly subaverage general intellectual functioning with deficient in adaptive functioning

14

initially manifested during the developmental period." (Tr. 16). And the evidence she cited in support, particularly Plaintiff's "lengthy and consistent formal work history", speaks to adaptive functioning. Therefore, the undersigned finds any error in wording does not amount to reversible error.

Because the ALJ's determination that Plaintiff did not meet the diagnostic description of Listing 12.05 is supported by substantial evidence, the Court need not reach Plaintiff's additional argument that the ALJ erred in alternatively finding he did not meet the paragraph C requirement that Plaintiff have "a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.05C.

## CONCLUSION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying DIB supported by substantial evidence and affirms that decision.

      s/James R. Knepp II
United States Magistrate Judge